USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __10/3/13__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\------------------------------------------------------------x

ANTHONY BRIAN MALLGREN,    :
:
:
                         Plaintiff,    :
        -v.-    :
:
MICROSOFT CORPORATION and    :
APPLE INCORPORATED,    :
:
                         Defendants.    :

\------------------------------------------------------------x

**OPINION AND ORDER**

12 Civ. 7517 (GBD)(JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Anthony Brian Mallgren ("Mallgren"), appearing *pro se*, has brought this diversity action pursuant to 28 U.S.C. § 1332, alleging a variety of claims against Microsoft Corporation ("Microsoft") and Apple Incorporated ("Apple") (collectively, "Defendants"). Specifically, Mallgren contends that Defendants "have committed tortuous [sic] acts, breached law of contract, created a fraudulent representation of their motives and operation, violating the foundation of which the law provides." Amended Complaint filed February 8, 2013 ("Am. Compl.") (Doc. No. 6), at ¶ II. 3.   Mallgren also asserts that Defendants "traded information, knowledge or strategy in a metaphysical exchange which went unnoted in any physical abstract of currency or value transaction." *Id.* at ¶ II. 16.

Microsoft has moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) Mallgren has failed to allege any facts establishing that the Court has subject matter jurisdiction; (2) the facts as alleged by Mallgren fail to state a claim upon which relief can be granted; and (3) Mallgren's allegations are frivolous.  Apple has also moved to dismiss the amended complaint pursuant to Rule 12(b)(6),

USDC SDNY
DATE SCANNED____10/3/13___

on the grounds that (1) Mallgren has failed to state a plausible claim for relief; and (2) Mallgren's allegations are frivolous. Apple also requests that Mallgren be denied leave to amend and that Mallgren should be enjoined or warned from filing further actions. The parties have consented to have me preside over this motion under 28 U.S.C. § 636(c) (Doc. No. 34). For the reasons that follow, Defendants' motions to dismiss are granted and the amended complaint is dismissed in its entirety. Mallgren is also warned that further duplicative or frivolous litigation in this Court will result in an order barring him from filing new actions without prior permission of the Court.

**I.      Background**

      A.      <u>Mallgren's Allegations</u>

The following facts are taken from the amended complaint, and, to the extent they are intelligible, are accepted as true for purposes of this motion. Mallgren alleges that he was employed by Microsoft from 2005 to 2007. Am. Compl. ¶ I. 7. He asserts that over the course of his employment, his manager "pursued and engaged in sexual relations" with Mallgren's wife, "exploiting her background, young age and the organization values of Microsoft, utilizing them to create false pretenses." *Id.* at ¶ I. 8. He alleges that on one occasion, his manager supplied Mallgren's wife with "fake government identification[,]" for the purpose of purchasing alcohol, and took Mallgren's wife on "outings where [his manager] purchased alcohol for her while underage." *Id.* at ¶ I. 9-10.

Mallgren alleges further that his wife began exhibiting signs of "severe emotional distress" and engaged in "very self destructive behaviors." *Id.* at ¶ I. 11. When the events regarding the alleged misconduct of the manager were brought to Mallgren's attention, he claims

that he spoke about them to his new manager, with human resources, and with media outlets. *Id.*
He alleges that he was then "given his 2 weeks to look for another job, was immediately let go
and escorted of [sic] the campus." *Id.* He further alleges that years after the manager's alleged
misconduct, authorities informed Mallgren that he and his wife had a "very strong civil case and
suggested pursuing damages" against the manager. *Id.* at ¶ I. 9.

Mallgren alleges that after leaving Microsoft he "secured venture capitalists and
biopharmaceutical organizations as clients" and started a business in Spokane, Washington. *Id.*
at ¶ I. 12. He also claims to have filed a patent application "for technologies concerning
semantic search." *Id.* at ¶ I. 13. He alleges that when he reported to his clients that he was
switching from a services model to an intellectual property model and his rates were going to
change, his clients discontinued his services. *Id.* Mallgren then went back to Bellevue,
Washington. *Id.*

Mallgren alleges further that he was hired by Audience Intelligence, a division of
Microsoft. *Id.* at ¶ I. 14. He alleges that he informed his manager at Audience Intelligence about
his patent. *Id.* Mallgren alleges that his manager at Audience Intelligence told him that there
was no conflict of interest between Mallgren's patent and Mallgren's work at Audience
Intelligence, and that Mallgren could continue working. *Id.* Mallgren alleges that he explained
his patent to his manager after his manager "grew curious" about it. *Id.* He further alleges that
his manager "grew excited" about the patent and told Mallgren that he "would soon be
introduced to many of the senior leadership team members." *Id.*

Mallgren alleges that his manager at Audience Intelligence called Mallgren into his office
and asked Mallgren what he would choose "if Microsoft forced his decision of either given [sic]

3

up his patent and working for Microsoft or continuing his work." *Id.* at ¶ I. 15.  Mallgren alleges

that he told his manager that he wanted to continue working at Microsoft since there was no

conflict of interest. *Id.*  However, if he was forced to pursue one or the other, he would choose to

keep his intellectual property. *Id.*  Mallgren alleges that his manager then asked Mallgren to

leave his office and escorted Mallgren off the campus without allowing Mallgren to go back to

his work station. *Id.*

Malgren alleges that he had "committed to a lease term," but "fell short on his planned

budget and could not pay the fees proper to continuing his patent due to breach of contract

without proper known cause." *Id.* at ¶ I. 16.

Mallgren also alleges that Microsoft acquired Powerset, which was a company in direct

competition with Collective Knowledge Linguistics, the company that Mallgren was creating at

the cost of $100,000,000. *Id.* at ¶ I. 17.

Mallgren alleges that in December 2011, "after growing tired with dealing with

Microsoft," he turned to Apple as "an ally in his endeavors as to not build a truly ground up

organization." *Id.* at ¶¶ I. 18, II. 15.  Mallgren alleges that Apple encouraged him to disclose his

plans and strategies for developing intellectual property at Apple. *Id.* at ¶ I. 18.  Mallgren further

alleges that the day after he disclosed his strategy to Apple, he was arrested for trespassing on

Apple property. *Id.*  Mallgren alleges that to his knowledge, the charges against him were

dropped after he was jailed. *Id.* at ¶ II. 15.

Mallgren alleges that Apple "intentionally or unintentionally conjures and invokes both

religious and metaphysical references through marketing tactics that are interpreted as such by

the market, as is made apparent through literature of their ecosystem." *Id.* at ¶ II. 1.  He alleges

4

that Microsoft, through its other endeavors, "administers knowledge operations . . . poisonous to the mind and body if administered without due foundation," "override[s] the Constitution of the United State[s] of America and it's [sic] laws and principles concerning due process and required occupation for the enforceability [sic] of patents," and "claims that to administer this knowledge is neither it's [sic] responsibility nor wishes to come into line and harmony with the foundation of the United States of America." *Id.* at ¶ II. 4-6.

Mallgren further alleges that both Apple and Microsoft "have committed tortuous [sic] acts, breached law of contract, created a fraudulent representation of their motives and operation, violating the foundation of which the law provides." *Id.* at ¶ II. 3. He alleges that both Apple and Microsoft "hold a fraudulent front and false veneer of a sense of existence." *Id.* at ¶ II. 19. He also alleges that both organizations "promote and sponsor malignant growth and benign stagnation and wish for decisive proxies to do the same," and "utilize justices who fail to weigh arguments, being once displaced from the foundation of law, having no identity within it's [sic] foundation, driving them to more immediate considerations." *Id.* at ¶ II. 9, 12.

Mallgren alleges that he "operates" out of 419 Lafayette Street (presumably in Manhattan, though he does not so specify) and lists a Brooklyn mailing address. *Id.* at 1, ¶ I. 1. He also alleges that Microsoft's principal place of business is in Redmond, Washington, and Apple's principal place of business is in Cupertino, California. *Id.* at ¶ I. 2-3. Mallgren further alleges that he believes the allegations set forth in the amended complaint "should satisfy the sufficient qualification of damages over $75,000" and "believes he is now entitled to the metaphysical exchange that the parties of interest committed to." *Id.* at ¶¶ I. 19, II. 20.

5

In his amended complaint, Mallgren seeks "relief in the form of a physical abstract of currency in an amount not yet determined." *Id.* at ¶ IV. 1.

B.  Procedural History

In lieu of an answer, Microsoft moved to dismiss the amended complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B),[1] arguing that it fails to allege any facts demonstrating that the Court has subject matter jurisdiction, fails to state a claim upon which relief can be granted, and contains frivolous allegations. *See* Microsoft's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, dated May 13, 2013, at 1 (Doc. No. 23).[2] Mallgren filed opposition papers to Microsoft's motion on May 29, 2013. *See* Plaintiff's Memorandum of Law in Response to Microsoft's Motion to Dismiss (Doc. No. 27). Apple moved to dismiss the amended complaint in its entirety on the same grounds as Microsoft, arguing that it fails to state a plausible claim for relief and contains frivolous allegations. *See* Apple's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, dated May 30, 2013, at 1 (Doc. No. 30). Mallgren filed opposition papers to Apple's motion on June 6, 2013. *See* Plaintiff's Memorandum of Law in Response to Apple's Motion to Dismiss (Doc. No. 33). No reply briefs were filed.

---

[1]    Section 1915(e)(2)provides in relevant part: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal – (i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be granted."

[2]    Though Microsoft seeks dismissal, *inter alia,* on subject matter jurisdiction grounds, it invokes only Rule 12(b)(6) and not Rule 12(b)(1) in its Notice of Motion. This is of no significance, however, as the Court can dismiss a complaint for lack of subject matter jurisdiction *sua sponte*, as is discussed *infra.*

6

## II.   Discussion

### A.   Applicable Legal Standards

Both Microsoft and Apple have moved to dismiss Mallgren's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, a court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 381 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Complaints prepared by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Peay v. Ajello*, 470 F.3d 65, 67 (2d Cir. 2006) (citation and quotation marks omitted).  Because Mallgren filed his pleadings *pro se*, the Court must liberally construe them and interpret his amended complaint "to raise the strongest arguments it suggests." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted).  However, the Court need not accept as true "conclusions of law or unwarranted deductions of fact[.]" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (quotation omitted).  In addition, the fact that Mallgren is proceeding *pro se* "does not exempt [him] from compliance with

7

relevant rules of procedural and substantive law[.]" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quotation omitted). A *pro se* complaint, like any other, "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).[3]

      B.    Mallgren Has Failed to Allege Any Facts Showing That the Court Has Subject Matter Jurisdiction

Mallgren seeks to invoke the Court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Am. Compl. at ¶¶ I. 5,6. The subject matter jurisdiction of the federal courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a "federal question" is presented (section 1331) or when plaintiff and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 (section 1332). The party asserting subject matter jurisdiction has the burden of proving that subject matter jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To establish diversity jurisdiction under § 1332, a plaintiff must first allege that he and the defendants are citizens of different states. Diversity must be complete; in other words, "no plaintiff and no defendant [may be] citizens of the same State." *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Diversity jurisdiction depends on the citizenship of the parties at the time a suit is filed and is not defeated if a party to the action subsequently becomes a citizen of the same state as his opponent. *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001). In

---

[3]    When deciding a 12(b)(6) motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, the court may also rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). The court can also consider "matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation omitted).

addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quotation omitted). The court, on its own initiative, may question the assertion of diversity jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

Mallgren's assertion of diversity jurisdiction is unsupported by the amended complaint. Mallgren fails to allege to a "reasonable probability" that his claims are in excess of the sum or value of $75,000.00. Mallgren asserts that "there were several events, occurances [sic] and that [he], upon information and belief, qualifies this as a case of $75,000 or more." Am. Compl. ¶ I. 6. He then states that he "wishes to not name [a] specific figure until proper discovery" and claims to seek "a physical abstract in an amount not yet determined." Am. Compl. ¶¶ I. 6, IV. 1. These conclusory and contradictory statements do not meet the plausibility standard. *Iqbal*, 556 U.S. at 678; *see also Wood v. Maguire Automotive, LLC*, 508 Fed. Appx. 65, 65 (2d Cir. 2013) (if allegation of $75,000 in controversy is conclusory, it is "not entitled to a presumption of truth"). As Mallgren fails to allege damages in excess of $75,000.00 to a "reasonable probability," the Court lacks subject matter jurisdiction. Mallgren's amended complaint must therefore be dismissed on this ground alone.[4]

---

[4]     Although Mallgren asserts that he was "operating out of New York" in the three months before he filed the amended complaint, he has changed his address three times since filing this case – from New York to Washington and back to New York. Moreover, Plaintiff has filed an action in the Eastern District of New York asking the court to "to remove and/or transfer all current and future proceedings in the New York State Supreme Court and the Southern and Eastern District United States District Courts of New York to the United States District Court of Washington, as well as transfer all current and future proceedings in the Second Circuit to the

C.   Mallgren Has Failed to State a Plausible Claim for Relief

Mallgren's amended complaint must also be dismissed for the alternative reasons that it fails to state a claim and is frivolous.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) requires that each allegation be "simple, concise, and direct."  In clarifying Rule 8's pleading standard, the Supreme Court held that:

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged

*Iqbal*, 556 U.S. at 678 (citation omitted).  This standard, commonly referred to as the "plausibility standard," is guided by two principles.  First, while district courts must accept as true all factual allegations contained in a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, when deciding what is plausible, a district court must consider the context and "draw on its judicial experience and common sense."  *Id.* at 679.

Read as leniently as possible, Mallgren's amended complaint fails to state any comprehensible claim.  The amended complaint is unclear both as to specific claims being made and as to any underlying facts that might support any claim recognized by law – it is anything but "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2).  Because it is impossible for the Court to draw any reasonable inference that Defendants are liable for any of the conduct alleged, the claims against them must be dismissed.  *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.

---

Ninth Circuit for the United States Courthouse of Appeals."  *See* Motion to Remove and Transfer, *Mallgren v. New York City*, No. 13-CV-724 (MKB), 2013 WL 816236 (Mar. 4, 2013) (Doc. No. 19).  While the Court does not reach the issue, these facts seriously call into doubt whether Mallgren was a citizen of New York rather than Washington State for diversity purposes at the time he initiated this lawsuit.

1988) ("Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."); *Jones v. Trump,* Nos. 96 Civ. 2995 (SAS), 96 Civ. 6927 (SAS), 1997 WL 277375, at *7 (S.D.N.Y. May 27, 1997) ("[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heat of the claim do not comport with the requirements of Rule 8.") (quotation omitted).

The Court finds further that Mallgren's allegations in the amended complaint are frivolous.  A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citation and internal quotation marks omitted).

The allegations here rise to the level of the irrational and there is no legal theory on which Mallgren may rely. *Id.* He alleges that Defendants "intentionally or unintentionally conjure[] and invoke[] religious and metaphysical references through marketing tactics that are interpreted as such by the market, as is made apparent through literature of their ecosystem," "were wanting of influence, mind presence, culture and foundational mental constructs," and "diluted [Plaintiff's] mind, resulting in subpar interactions not fully understood by the parties of interest." Am. Compl. at ¶¶ II. 1, 17, 18.

In deference to Mallgren's *pro se* status, the Court would normally direct Mallgren to amend his complaint, but because he has already had an opportunity to amend, and the deficiencies of Plaintiff's amended complaint could not be cured with a further amendment, leave to amend further will not be provided here. *See, e.g., Hill v. Curcione*, 657 F.3d 116, 123

11

(2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given.").

D.   Mallgren's Litigation History

The Court is aware that since September 25, 2012, Mallgren has filed 30 actions in United States District Courts nationwide and taken 16 appeals.[5] Many of these actions have been deemed frivolous or meritless.  Mallgren has been advised previously in the Eastern District of Washington, where he has filed multiple meritless actions, that "the filing of further frivolous actions will result in the imposition of more serious sanctions than dismissal." *Mallgren v. Clerk's Office*, No. 13–CV–0210–TOR, 2013 WL 3553397, at * 2 (E.D. Wash. July 11, 2013); *see also Mallgren v. Wolf*, No. 13–CV–0218–TOR, slip op. (E.D. Wash. July 11, 2013); *Mallgren v. New York City*, No. 13–CV–0182–TOR, 2013 WL 3179567 (E.D. Wash. June 21, 2013); *Mallgren v. Providence Health Serv.*, No. 13–CV–0180–TOR, 2013 WL 3154175 (E.D. Wash. June 21, 2013).  Mallgren has also been warned in the Eastern District of New York, where he has also filed multiple meritless actions, that the future filing of vexatious and frivolous litigation may result in the imposition of an injunction prohibiting him from making future filings seeking *in forma pauperis* status without leave of the court. *Mallgren v. Motion Recruitment Partners Inc.*, No. 13 Civ. 1054 (MKB), 2013 WL 1873304, at *4 (E.D.N.Y. May 2, 2013); *see also Mallgren v. John Doe Corp.*, No. 13 Civ. 1265 (MKB), 2013 WL 1873319 (E.D.N.Y. May 2, 2013); *Mallgren v. Bloomberg*, No. 13 Civ. 1466 (MKB), 2013 WL 1873334 (E.D.N.Y. May 2, 2013).

Including this action, Mallgren has filed seven civil actions in this Court since September 25, 2012, all of which have been dismissed except for this one. *See Mallgren v. Parties in this*

---

[5]     This information was obtained as a result of a nationwide search on www.pacer.gov.

*petition*, No. 13 Civ. 3660 (S.D.N.Y. Aug. 1, 2013) (petition seeking exemption from user fees

charged for access to PACER denied); *Mallgren v. New York Hosp.*, No. 13 Civ. 1763 (LAP),

slip op. (S.D.N.Y. May 13, 2013) (dismissed for lack of subject matter jurisdiction); *In Re*

*Anthony Brian Mallgren*, No. 13 Civ. 1124 (LAP), slip op. (S.D.N.Y. Mar. 6, 2013) (dismissed

for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii)); *Mallgren v. New York State Supreme Court*, No. 12 Civ. 7404 (GBD), 2013

WL 586857 (S.D.N.Y. Feb. 11, 2013) (dismissed for failure to comply with state court filing

requirements); *Mallgren v. New York State Supreme Court*, No. 12 Civ. 7240 (LAP), slip op.

(S.D.N.Y. Nov. 13, 2012) (dismissed for lack of subject matter jurisdiction, for failure to state a

claim upon which relief may be granted, and because the defendant is immune from suit pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Mallgren v. Intellectual Ventures*, No. 12 Civ. 7447 (LAP),

slip op. (S.D.N.Y. Nov. 7, 2012) (dismissed for failure to state a claim upon which relief may be

granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).

 In light of his litigation history, Mallgren was or should have been well aware of the

requirement to state a plausible claim for relief when he filed this action. *See Sledge v. Kooi*,

564 F.3d 105, 109-10 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant

may be charged with knowledge of particular legal requirements). Accordingly, <u>Mallgren is</u>

<u>warned that further duplicative or frivolous litigation in the Southern District of New York will</u>

<u>result in an order pursuant to 28 U.S.C. § 1651(a) barring him from filing new actions without</u>

<u>prior permission of the Court</u>.[6] *See In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect

to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be

---

[6]     Section 1651(a) empowers courts to "issue all writs necessary or appropriate in aid of
their respective jurisdictions and agreeable to the usages and principles of law." *See also Wyly v.*
*Weiss*, 697 F.3d 131, 137 (2d Cir. 2012).

limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing

vexatious and frivolous complaints."); *Martin-Trigona v. Lavien*, 737 F.2d 1254, 1262 (2d Cir.

1984) ("Courts are not powerless to protect the public, including litigants . . . from the

depredations of those . . . who abuse the process of the Courts to harass and annoy others with

meritless, frivolous, vexatious or repetitive . . . proceedings.") (quotation omitted).

## III.   Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and the

amended complaint is dismissed.  The Clerk is directed to close Docket entries 22 and 29, and

enter judgment for Defendants.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any

appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for

purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated: October 3, 2013
       New York, New York

JAMES L. COTT
United States Magistrate Judge

**Copies of this Opinion and Order have been sent by ECF to counsel of record and by mail to:**

Anthony Brian Mallgren
1921 Sagent Road
Spokane, WA 99212